Jones *v.* Seward.

(*Mactier* v. *Frith*, 6 *Wend.* 103. *Vassar* v. *Camp*, 1 *Kernan*, 441.)

The public post office is governed by no private interests. The officers who direct its operation are regulated by law, and its violation is punished criminally. The operators of the telegraph are appointed or employed by private enterprise, and are responsible to those who employ them for the proper performance of their service. There are also other distinctions. The telegraphic companies have been conducted, so far as has come to my knowledge, with great integrity and fidelity, but ·an institution of that description cannot, while conducted by private enterprise, be so clothed with a public official character as to make the receipt of a communication at the office of the telegraph company of the same effect, in relation to the acceptance of an offer by a contracting party, as the actual delivery of it would have.

The judgment should be reversed, and a new trial had before the same referee. The costs of the appeal to the appellant to abide the event.

[NEW YORK GENERAL TERM, February 1, 1864. *Leonard, Sutherland* and *Clerke*, Justices.]

---

## JONES *vs.* SEWARD.

The constitution of the United States extends the judicial power of the union to all cases in law and equity arising under the constitution, laws and treaties of the United States. And it has been decided that a case arises, within the meaning of this provision, as well when the defendant seeks protection under a law of congress, as when a plaintiff comes into court to demand some right conferred by law.

Accordingly *held* that congress having, by the act of March 3, 1863, relating to *habeas corpus*, &c. provided that on suits being brought for any arrest, imprisonment &c. made "by virtue or under color of any authority derived from, or exercised by or under the president of the United States, or any act of congress," the defendant may remove such action into the circuit court of the United States, the court in which the action is brought has

nothing to do with the validity of the act of congress as a defense to the suit. It is sufficient that the defense involves the construction and effect of a law of congress. CLERKE, J. dissented.

If the defendant, in an action for false imprisonment, sets up as a defense the orders &c. of the president, the question for the court is not as to the constitutionality of the fourth section of the act of congress, declaring that the order or authority of the president shall be a defense, in all courts, to any action for an arrest &c. made under or by color of the president's order, or any law of congress; but is as to the constitutionality of the fifth section of the act, authorizing the defendant to remove the action from the state court to the circuit court of the United States. *Per* SUTHERLAND, J.

And upon an appeal from an order denying a motion to remove the cause to the circuit court of the United States, the question is not as to the constitutional power of the president to order the arrest, imprisonment &c. or as to the constitutional power of congress to authorize the president to order the arrest, imprisonment &c. complained of; but it is as to the constitutional power of congress to give the circuit courts of the United States original and exclusive jurisdiction of the trial of actions for such arrests, imprisonments, &c.

In cases coming within the fifth section of the act of March 3, 1863, no application to the state court is necessary in order to give to the circuit court of the United States posession of the action; but if such an application is made, and denied, the general term may, on appeal, direct an order to be entered transferring the cause to the circuit court of the United States.

APPEAL from an order made by Justice CLERKE at chambers, denying a motion made by the defendant to remove the proceedings in this action to the circuit court of the United States for the southern district of New York. The action was brought by the plaintiff to recover damages for an alleged false imprisonment, caused by the instigation, procurement, direction and command of the defendant. He stated, in an affidavit read in opposition to the motion, that on the 19th day of December, 1861, while at the New York Hotel, in the city of New York, he was accosted by a person to him unknown, who pronounced him a prisoner, and with force and arms caused the plaintiff to go with him, after several delays and interruptions, to Fort Lafayette, and then and there incarcerated the plaintiff, and caused him to be kept a prisoner in close confinement for near the space of four

Jones *v.* Seward.

months. And that during such confinement he was not allowed to send any communication to his friends or other persons with a view of seeking legal relief, and that deponent had not been informed of the cause of his arrest, or the authority whereby he was arrested, except that he was shown by the person who arrested him a telegram, of which the following is a copy :

" The Hon. Geo. W. Jones, late Minister to Bogota, and late Senator in Congress from Iowa, leaves here this afternoon for New York Hotel, arrest him and send him to Fort Lafayette.                                      W. H. SEWARD.
  Dated Washington City, Dec. 19, 1861."

The motion was founded upon a petition of the defendant, in which he alleged that he was secretary of state of the United States, and that the action was brought against him for acts alleged to have been done by him as such, under authority derived by him from the president of the United States, in causing and procuring the plaintiff to be arrested and imprisoned, or for some other wrong alleged to have been done the plaintiff under such authority, during the present rebellion of the so-called Confederate States against the government of the United States of America. The defendant claimed that the case came within the act of congress passed March 3, 1863, entitled "An act relating to *habeas corpus* and regulating judicial proceedings in certain cases," the fifth section of which provides that if any suit has been or shall be commenced against any officer, civil or military, or any other person, for any arrest, imprisonment &c. during the present rebellion, " by virtue or under color of any authority derived from or exercised by or under the president of the United States, or any act of congress," the defendant may remove such action into the circuit court of the United States for the district where the suit is brought, &c.

The case at chambers is reported, 40*th Barbour*, 563.

---

Jones *v.* Seward.

---

*Jas. T. Brady* and *Wm. C. Traphagen*, for the appellant.

*Wm. F. Allen* and *E. R. Meade*, for the respondent.

LEONARD, P. J. The question is not whether the fourth section of the act of congress passed March 3d, 1863, affords a valid defense to the action. The true question is this : Is it in the power of congress to give the circuit court jurisdiction of the case ? The constitution extends the judicial power of the Union to all cases in law and equity arising under the constitution, laws and treaties of the United States. The defense in this case arises under the act of congress, and the validity of that act, considered in the light afforded by the constitution, will be one of the principal subjects to be determined at the trial. It has been decided that a case arises, within the meaning of the constitution, as well when the defendant seeks protection under a law of congress as when a plaintiff comes into court to demand some right conferred by law.

It has been objected that the original jurisdiction of all actions may be drawn into the federal courts, by similar enactments of congress, and that the *case arises* within the meaning of the constitution, only after a trial and judgment in this court, when the action can be transferred by writ of error or appeal, and brought before the federal courts for review.

The power of transferring causes to the United States circuit in a similar manner, where the question involved was of an appellate and not an original jurisdiction, has long been sustained. Chief Justice Marshall says, in the case of *Osborn* v. *The Bank of the United States*, (9 *Wheaton*, 821,) " We perceive no ground on which the proposition can be maintained that congress is incapable of giving the circuit courts original jurisdiction, in any case to which the appellate jurisdiction extends." Congress has enacted that the defendant may interpose in his defense the orders &c. of

Jones *v.* Seward.

the president, and has directed the transfer of cases involving such a defense, in the manner prescribed, into the circuit court.

According to the statements of the defendant such a case has arisen. We have nothing to do with the validity of the law as a defense to the action. It is sufficient for the state court that the defense involves the construction and effect of a law of congress. The case has then arisen, when the courts of the United States may have jurisdiction, if congress so directs. If the law does not afford a constitutional or valid defense, it cannot now be doubted that the learned justices of the United States courts will so declare it, when the jurisdiction of such cases will remain in the state courts as before the enactment of the law. It is not our duty, therefore, to assert the independence of our state sovereignty and jurisdiction; for the final construction and effect of all acts of congress may be brought before the United States courts by the express provisions of the constitution. The manner of taking the cause to those courts is of no consequence. The supreme court of the union must be relied on to prevent its jurisdiction from being unlawfully extended by congress. I am of the opinion, therefore, that congress has the power to direct the transfer of such cases.

In my opinion this application was unnecessary in order to vest the United States circuit court with the possession of the action, but the discussion has not been lost, inasmuch as it will be now settled that this court will not in this judicial district take further cognizance of cases which have been transferred under this act of congress. It is very proper that an order be entered transferring the cause to the United States circuit, as it affords the evidence in this court of the disposition made of it. In arriving at my conclusions I have consulted *Story's Com. on the Const.* ch. 38, §§ 903, 906, *&c., &c., &c.; Martin* v. *Hunter*, (1 *Wheaton*, 304;) *Cohens* v. *The State of Virginia*, (6 *id.* 264;) *Osborn* v. *The Bank of the United States*, (9 *id.* 738.) As a rule of practice I think the court should not approve any sureties unless the amount

Jones *v*. Seward.

of the bond is equal to the sum in which the defendant in the action has been held to bail, if bail has been required in the state court. This fact should be made to appear to the satisfaction of the judge to whom the bond is presented for approval.

The decision in this case will also embrace the case of *Gudeman* v. *Wool*, argued at the same general term as the present case.

The order appealed from should be reversed, and the motion made below should be granted, without costs.

SUTHERLAND, J. The question is not as to the constitutionality of the fourth section of the act, declaring that the order or authority of the president, during the rebellion, shall be a defense in all courts to any action for arrest, imprisonment, or act done or omitted to be done, under or by color of the president's order, or of any law of congress ; but the question is as to the constitutionality of the fifth section of the act, authorizing the defendant in any such action to remove the same from the state court to the circuit court of the United States for the district where the suit is brought, for trial, on complying with certain requirements specified in the section ; that is, on entering his appearance ; filing his petition stating the facts ; offering good and sufficient surety, &c.

The question presented by this appeal is not as to the constitutional power of the president to order the arrest, imprisonment &c. or as to the constitutional power of congress to authorize the president to order the arrest, imprisonment &c. ; but the question presented by the appeal is as to the constitutional power of congress to give the circuit courts of the United States primary or original, and, (as to the state courts,) exclusive jurisdiction of the trial of actions for such arrests, imprisonments &c.

In determining the question as to the constitutionality of the fifth section of the act we must assume, I think, that the

trial of this action will involve the determination of the question as to the constitutionality of the fourth section; that congress in passing the act considered that the trials of the actions to be removed to the circuit courts of the United States under it would involve the determination of the question as to the constitutionality of the fourth section, whether tried in the state or United States courts; and that congress intended by the fifth section to take from the state courts, and give to the circuit courts of the United States, the right and power to determine that question.

Had congress the constitutional power to do this ? That is the question. If congress had the power then the order appealed from, denying the defendant's motion to remove the action and all proceedings therein to the circuit court of the United States for the southern district of New York, should be reversed, and, I think, an order made directing such removal. If congress had not the power, then the order appealed from should be affirmed.

If no steps had been taken for the removal of the action from this court, and the action should be tried in this court, and the question as to the constitutionality of the fourth section of the act should be decided adversely· to the defendant by the court of appeals of this state, the supreme court of the United States would have final and conclusive *appellate* jurisdiction of the question. (*Const. U. S. art.* 3. *Sec.* 25 *of the Judiciary act.* 1 *Stat. at Large,* 85. *Cohens* v. *Virginia,* 6 *Wheat.* 264. *Miller* v. *Nichols,* 4 *id.* 312.)

Cannot congress give the circuit courts of the United States *original* jurisdiction in any case to which this *appellate* jurisdiction extends ? In *Osborn* v. *United States Bank,* (9 *Wheat.* 738,) cited by Judge Leonard, Ch. J. Marshall said he could perceive no ground for saying that congress could not. In that case one of the questions was, whether congress could constitutionally confer on the bank the right to sue and be sued "in every circuit court of the United States." It was held that such a suit was a case arising un-

der a law of the United States; consequently, that it was within the judicial power of the United States, and congress could confer upon the circuit court jurisdiction over it. See also *Curtis' Com. on the Jurisdiction &c. of the Courts of U. S.* §§ 12 *and* 13; the latter section containing a quotation from another portion, (p. 865,) of the opinion of Ch. J. Marshall in *Osborn* v. *The Bank of the United States* apparently quite pertinent to the question in this case.

I concur then in the conclusion of Judge Leonard, that congress had the power to direct the transfer to the circuit court of the United States. Probably an order of this court directing such transfer is not actually necessary, but to make one would be in accordance with usage in like cases; and besides, such an order would be the best evidence of the determination of this court that it no longer had jurisdiction of the action.

It appearing that the defendant has complied with the requirements of the act for such transfer, the order appealed from should be reversed, and an order made by this court for the removal of the action and all proceedings therein to the circuit court of the United States.

CLERKE, J. (dissenting.) I see nothing whatever in the arguments of my brethren, or in those of other judges on the same subject, to induce me to recede from the position which I have attempted to maintain at special term. They have all alike, in my very humble judgment, unaccountably overlooked the only point claiming consideration on the great constitutional subject.

According to the doctrine upheld by my brethren, we can scarcely conceive of any act, committed by any officer of the general government, under color of any authority derived from or under the president, which may not constitute a genuine veritable case arising under the constitution of the United States, and which, therefore, may not rightly come within the cognizance of their judicial power. It is only

Jones *v.* Seward.

necessary to claim that it was committed under color of that authority, and was, therefore, justified by the constitution, however monstrous and appalling the act may be, to make it, according to this doctrine, a case arising under that constitution. For, of course, according to the terms of the claim, the claimant appeals, through this remarkable statute, to the constitution for his justification, and, however palpably frivolous such a claim may be, however palpably manifest may be the conviction that the constitution no more sanctions such an act than it sanctions the burning of the capitol, the dispersion of congress, and the shooting, imprisonment or exile of the men of whom it is composed, yet it is claimed to present a question, and, therefore, a case arising under the great charter of constitutional liberty in America; the perpetrator of the outrage making that a question, which is unquestionably no question; and the judicial power of the state is ousted of its legitimate jurisdiction. Thus, this extraordinary statute prescribes not only that the character, but the mere assertion, of the wrongdoer shall determine jurisdiction, and that the subject matter, which has been always held, except in cases affecting ambassadors, other diplomatic ministers and consuls, as alone the criterion of jurisdiction, shall be excluded from consideration. Surely, if this can be done by congress, the government of the United States of America is not, as all men have heretofore supposed, incontestably a government of limited powers and duties, and is, if not one of unlimited powers and duties, nevertheless, of very accommodating expansibility. This is a novel and strange theory of development in America.

But, it is asserted, as the appellate power of the supreme court of the United States extends in certain cases to state tribunals, that this case would after judgment reach the federal jurisdiction, and that, therefore, it may as well be transferred to the United States circuit court before judgment. Even if the supreme court of the United States would *entertain* such a case on appeal, this is no controlling

reason why it should, necessarily, be transferred to the United States circuit for adjudication in the first instance. For, the only question to be determined by us on this motion, is whether congress has the power to transfer cases of this description to the circuit court of the United States, not whether, ultimately, it may reach the appellate jurisdiction of the United States supreme court. The act of Congress, passed in 1789, "to establish the judicial courts of the United States," no doubt provides that a final judgment or decree in any suit in the highest court of law or equity of a state, where is drawn in question the validity of a statute of the United States, and the decision is against its validity, may be re-examined and reversed or affirmed in the supreme court of the United States. But, if it is too clear for controversy that the statute is an outrage on the constitution—if it is palpably usurpation—if it is plain to the most unlettered citizen that the statute is an attempt to subvert all the securities which the founders of the government have provided for the preservation of personal liberty, and to invest one man with unlimited dictatorial power, and, therefore, that the appeal was palpably frivolous, I presume the court would hear no argument on such an appeal, and would, forthwith, affirm the judgment or dismiss the suit. Would they, for instance, hearken to an appeal involving the validity of an act of congress giving the president or any other member of the government power by a *coup d' etat* to extinguish the legislative branch, as Cromwell did the long parliament, and substitute a Barebones legislature in its place. Surely not, if they too were not struck down, and were not, (if such debasement can be imagined,) by force, by fear, or by corrupt appliances, or selfish aspirations robbed of independence. So that, the consideration, whether the act is not palpably void, must present itself on appeal, and now presents itself to us on this motion; and, if it is palpably void, I repeat, it would not be treated on appeal as worthy of being for a moment entertained. I still consider the defense in this case just

as destitute of color as the case which I have imagined. Whether under the pretext of authority from the president of the United States, any one citizen, at his mere will and pleasure, without any intervention of the judicial tribunals, can incarcerate another citizen, not subject to military law, in a loathsome dungeon, for many months, or for a day or an hour, cannot, under any circumstances in which the nation may be placed, be treated as a question constituting a case arising under the constitution; and any statute, which declares the contrary, is palpably void.

The order made at special term should be affirmed, with costs.

[New York General Term, February 1, 1864. *Leonard, Clerke* and *Sutherland,* Justices.]